## 58255. PERKINS v. THE STATE.

UNDERWOOD, Judge.

Perkins was indicted for murder and convicted in the Superior Court of Chatham County of voluntary manslaughter. He appeals, contending (1) the trial court erred by denying his motion for a new trial, as he was mentally incompetent to stand trial when the case was tried; (2) the trial court erred by allowing a photograph in evidence which had no probative value; (3) the prosecuting attorney violated Perkins' constitutional and statutory rights by commenting on his silence prior to trial and at the preliminary hearing; (4) the trial court erred in failing to charge the jury on impeachment of a witness; and (5) the trial court erred by failing to charge the jury as to the essential elements of murder.

On the night of November 20, 1977 Perkins and the victim, Henry Washington, got into an argument at the home of a friend over a gun Washington had previously taken from Perkins. Perkins pulled a pistol out of his pocket and shot Washington. He admitted the shooting in a voluntary statement to police. However, he testified at trial that he thought Washington had a rifle and was afraid Washington was going to shoot him.

1. With regard to Perkins' first enumeration, the record does not support his contention. His trial was held on August 30 and 31, 1978. The physician's report of his hospitalization at the Georgia Regional Hospital at Savannah from May 8 to May 16, 1978 indicates that at the time of his discharge from the hospital he knew the difference between right and wrong. A letter from the Forensic Services Program at the same hospital, dated May 24, 1978, stated that he was competent to stand trial. A letter from the same organization dated July 5, 1978 states that Perkins was responsible for his behavior and that he appeared to have sufficient mental capacity to distinguish right from wrong. A third letter from the same

organization, dated March 12, 1979 stated that as of the last time Perkins was seen (June 9, 1978) he showed no signs of psychosis and was competent to stand trial. Finally, a letter from Central State Hospital, Milledgeville, dated January 23, 1979, stated that Perkins was "competent to proceed with his legal situation," and the hospital agreed with the conclusion of the Forensic Services Team at Savannah Regional Hospital. The record itself indicates only that while testifying Perkins was "very, very nervous" and his attorney hoped "that during the next two witnesses he'll have some time to collect himself and calm down some." The trial judge allowed the cross examination of Perkins to be interrupted and delayed while two other witnesses testified. There is no indication in the record that on his return to the witness stand he had any further difficulties. Thus, the record and the mental evaluations of Perkins do not support the contentions that he "totally lost control of himself" or that the jury witnessed the defendant having a "psychotic episode." Error must be shown by the record and "[t]he brief cannot serve in the place of the record or the transcript for the purpose of demonstrating error or for supporting a claim of error." *Maloy v. Dixon,* 127 Ga. App. 151 (1), 154 (193 SE2d 19) (1972). Accordingly, this enumeration is without merit.

2. The trial court did not err in admitting state Exhibit 7, a photograph of the deceased victim in this case, into evidence. *Coffee v. State,* 230 Ga. 123, 125 (195 SE2d 897) (1973). "This court has held many times that photographs of the victim of a crime are admissible, where they are relevant on the issues in the case, although they may be inflammatory and prejudicial to the accused." *Edwards v. State,* 233 Ga. 625, 627 (212 SE2d 802) (1975). The photograph corroborated the testimony of witness McKinney and also was relevant as to whether the victim had a rifle when he was shot. "It is well settled that photographs which do have probative value . . . although gruesome and only corroborative or cumulative of other evidence, are entitled to admission." *Teal v. State,* 122 Ga. App. 532 (1) (177 SE2d 840) (1970); *Trask v. State,* 132 Ga. App. 645 (4), 646 (208 SE2d 591) (1974). "And this is true even though the defendant had stipulated everything the

photographs would show." *Trask,* supra, at p. 646. Detective Scott testified that he was present when the picture was taken, and the picture shows the victim's body as it was found. It also shows the doorway and the hall that was referred to in the testimony. Thus, there is no basis for Perkins' contention that there was no testimony that states the photograph accurately showed the victim's position. We find no error concerning the photograph.

3. On cross examination the prosecuting attorney questioned Perkins as to whether he had told the detectives that he was afraid of Washington or that he had shot in self-defense, and whether he had mentioned self-defense to anyone other than his lawyer. Objection to this testimony was overruled by the trial judge. After inquiring as to whether Perkins had testified at the preliminary hearing the prosecuting attorney then asked the question, "So you've had nine months — nine months and a week or so — to tell somebody you were afraid of Henry Washington, you thought he was going for a gun, or you thought he was carrying a gun, and you never mentioned it before today, is that correct — except to your lawyer?" The defense attorney objected again on the ground that the defendant is not required to make any statement, and the failure to make any statement cannot be commented on by the (prosecuting) attorney. The trial judge sustained the objection.

In *Johnson v. State,* 235 Ga. 355, 357 (219 SE2d 430) the Supreme Court held that it was proper for a prosecuting attorney to question a defendant as to whether he did or did not tell certain things to the police, on the basis that "no contention was made by appellant or his counsel that he had remained silent when arrested." Under this principle we find no error in the questions by the prosecuting attorney regarding Perkins' failure to mention self-defense to the police. With regard to the questions relating to his silence at the magistrate's hearing, it is clear that Perkins had a right to remain silent and not testify and questions concerning this were improper. The trial judge recognized this and properly ruled that the prosecuting attorney should avoid that line of questioning. Both the Supreme Court and this court have held that "[a] sustained objection to an improper

remark made by counsel, without a motion for mistrial, will not constitute grounds for a reversal." *Lenear v. State,* 239 Ga. 617, 621 (238 SE2d 407) (1977); *Wilson v. State,* 145 Ga. App. 315 (5) 324 (224 SE2d 355) (1978). It is also noted that at the time he sustained the objection the trial judge stated, in the presence of the jury, that "[t]he defendant is under no burden to produce any evidence, no burden to produce any defense if he does not wish to do so, and the fact that he does not do that cannot be held against him ..." Thus, no error was committed.

4. Defense counsel did not request an instruction on impeachment of witnesses. The Supreme Court has held that it is not reversible error for a trial court to fail to charge without request on the impeachment of witnesses even if impeachment evidence was introduced at trial. *Gordy v. State,* 236 Ga. 723 (225 SE2d 287) (1976). Thus, no error was committed.

5. There is no merit to Enumeration 5, as a reading of the transcript shows clearly that the trial judge instructed the jury as to the elements of murder and voluntary manslaughter.

*Judgment affirmed. McMurray, P. J. and Banke, J., concur.*

ARGUED JULY 12, 1979 — DECIDED OCTOBER 10, 1979 — REHEARING DENIED OCTOBER 30, 1979 —

*G. Terry Jackson,* for appellant.
*Andrew J. Ryan, III, District Attorney, Robert M. Hitch, III, Assistant District Attorney,* for appellee.