## 61199. DANIELS v. THE STATE.

POPE, Judge.

Thomas Edward Daniels was indicted for the murder of Bobby Harrison; he was convicted of voluntary manslaughter. We affirm.

1. The evidence showed that Daniels was sitting alone at the bar of a Muscogee County tavern in the late evening hours of May 26, 1979. Bobby Harrison and his friend Willie Elliott entered the tavern together and approached Daniels. Although both men were unknown to Daniels, he brought them each a beer. The evidence was in dispute as to what next transpired between Daniels and Elliott, but after a brief elapse of time, Daniels struck a blow with his fist to Elliott's face which sent Elliott reeling backwards several feet. Elliott then broke a pool cue over his knee and headed toward Daniels with the "big end." Daniels hurriedly left the tavern followed by Elliott. Daniels reached his truck in the tavern's parking lot, removed his gun from the truck's floor board, and brandished the gun at Elliott. Upon seeing the gun, Elliott fled across the parking lot. Up to this point in time, Bobby Harrison was uninvolved in the altercation between Ellictt and Daniels.

Harrison emerged from the tavern after Elliott and also

approached Daniels. Daniels testified that Harrison, as he approached, twice threatened to "cut" him; Daniels thrice warned Harrison not to come any closer. As Harrison began to remove his hand from his pants pocket, Daniels shot him in the face.

Harrison was between 5 and 8 feet from Daniels when he was shot. Although the evidence was in dispute as to which pocket Harrison had his hand in, the parties stipulated that an unopened knife was found to have been in his right front pants pocket. Daniels testified, "I can't say that I saw a knife. I saw him come out of his pocket with something that appeared to be a knife." None of the eyewitnesses saw a knife.

Although the evidence in this case was in dispute, we find that a rational trier of fact could have found the essential elements of voluntary manslaughter from the evidence presented beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Accord, *Thompson v. State,* 157 Ga. App. 600 (1981); *Bullard v. State* 157 Ga. App. 606 (1981). "For the same reason, it was not error for the trial court to deny the motions for directed verdict at the conclusion of the [S]tate's case and again at the close of all the evidence. Only where there is no conflict in the evidence and a verdict of acquittal is demanded as a matter of law is it error for a trial court to refuse to direct a verdict of acquittal." *Vilicic v. State,* 152 Ga. App. 207, 208 (262 SE2d 502) (1979). Therefore, appellant's first enumeration of error is without merit.

2. Appellant contends that the trial court erred in charging the jury as to voluntary manslaughter. We disagree.

"Code Ann. § 26-1102 provides that 'A person commits voluntary manslaughter when he causes the death of another human being, under circumstances which would otherwise be murder, if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person;. . .' Our Supreme Court has held that a trial judge 'may, of his own volition and in his discretion, charge on a lesser crime of that included in the indictment or accusation.' [Cit.] 'When a homicide is neither justifiable nor malicious, it is manslaughter, and if intentional, it is voluntary manslaughter.' [Cit.] 'The sufficiency of the provocation and question of "cooling time" are in all cases for the jury. Code Ann. § 26-1102.' [Cit.] 'On the trial of a murder case, if there is any evidence to create a doubt, however slight, as to whether the offense is murder or voluntary manslaughter, instructions as to the law of both offenses should be given.' [Cits.] Under the circumstances of this case, it was not error for the trial court to instruct on voluntary manslaughter." *Ward v. State,* 151 Ga. App. 36 (1) (258 SE2d 699) (1979); *Jones v. State,* 71 Ga. App. 56 (30 SE2d

284) (1944).

3. Daniels contends that the trial court committed reversible error by refusing to allow him to physically exhibit to the jury scars he had received as the victim of an unrelated, prior stabbing. He argues that he was entitled to exhibit his scars to the jury so that they could make a completely informed judgment as to whether or not his conduct was that of a "reasonable man" in terms of his defense of self-defense. As provided in Code Ann. § 26-902 (a): "A person is justified in. . . using force against another when and to the extent that he reasonably believes that such . . . force is necessary to defend himself . . . against such other's imminent use of unlawful force; however, a person is justified in using force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent death or great bodily injury to himself. . ."

"In construing this language it is necessary to consider the provision of Code Ann. § 26-401 (p), which defines reasonable belief. This section provides: ' "Reasonable belief" means that the person concerned, acting as a reasonable man, believes that the described facts exist.' Under this definition the rule exemplified by the decision in *Fudge v. State,* 190 Ga. 340, 343 (9 SE2d 259) [(1940)], that the fears must be those of a reasonable man, and not just the defendant's, was not changed by the enactment of the Criminal Code of Georgia. . ." *Moore v. State,* 228 Ga. 662, 666 (187 SE2d 277) (1972). Accordingly the trial court did not err in excluding this testimony, the purpose of which was to describe circumstances such as would excite the fears of Daniels. See *Jackson v. State,* 239 Ga. 40 (4) (235 SE2d 477) (1977); *Fudge,* supra.

The cases cited by Daniels in support of this enumeration are factually distinguishable from the instant case. *Baker v. State,* 246 Ga. 317 (271 SE2d 360) (1980), dealt with the probative value of evidence which tended to show that the victim's injuries were caused by someone other than the defendant; *Milton v. State,* 245 Ga. 20 (262 SE2d 789) (1980), dealt with the admissibility of evidence which showed prior difficulties between the defendant and the victim.

4. In his fourth enumeration Daniels asserts that the trial court erred by instructing the jury as to the legal principle of flight. Daniels testified that after he had shot Harrison, he pulled Harrison's shirt up to see if he could help him in some way; he thought he had shot Harrison in the stomach. Daniels then got in his truck and drove home where he telephoned the police to report what had happened. Daniels explained his departure from the scene as being prompted by his fear of Elliott and his uncertainty as to Elliott's whereabouts after the shooting.

"Evidence of leaving the scene of a crime after it has been committed where an innocent explanation is given presents a jury question as to whether the appellant left for the innocent reason or because of a consciousness of guilt, and the court properly so charged." *Wynn v. State,* 152 Ga. App. 479, 480-481 (263 SE2d 258) (1979). Therefore, this enumeration of error is not meritorious.

5. Daniels contends that the trial court erred in denying his motions for mistrial based on statements by the prosecutor in both his opening and closing remarks to the jury which attempted to inject evidence of the deceased's good character. In both situations the trial court instructed the jury to disregard the prosecutor's statements relating to the character of the deceased and admonished the prosecutor to refrain from that line of discussion.

"The trial judge took the necessary purgative action by means of a thorough and forceful instruction to the jury and rebuke to the prosecutor. His language in doing so was more than sufficient to remove any improper impression from the minds of the jurors. The extent of a rebuke and instruction is within the discretion of the court, and when, as here, the improper remark is cured by timely corrective action calculated to preserve the defendant's right to a fair trial, then we cannot say that the court abused its discretion in refusing to grant a mistrial. Code Ann. § 81-1009. . ." *Benefield v. State,* 140 Ga. App. 727, 730 (232 SE2d 89) (1976); *Barrow v. State,* 235 Ga. 635 (8) (221 SE2d 416) (1975). See also *Phillips v. State,* 149 Ga. 255 (2) (99 SE 874) (1919); *Brown v. State,* 57 Ga. App. 864 (1) (197 SE 82) (1938).

6. Daniels' sixth enumeration alleges that the trial court erred in allowing the sister of the deceased to testify and identify a certain photograph depicting her deceased brother posing with his small child. The record discloses that this witness was asked to testify by the prosecution on the morning the trial began. The extent of her testimony was the identification of her deceased brother in two photographs — the first showing him posing with his young son and the second showing him shortly after he had been shot in the face. The record also shows that this witness began crying after having been shown the second photograph and that she had broken down and cried earlier that day when the prosecution first showed her the photographs. Daniels moved for a mistrial which the court denied. Daniels contends that the prosecution's sole purpose in calling this witness was to create sympathy for the deceased and inflame the jury against him.

The record clearly shows that any one of several of the State's witnesses could have identified the photographs as accurately depicting the deceased. Under the circumstances in this case, we are

compelled to conclude that the prosecution's primary purpose in calling this witness was indeed to generate sympathy toward the deceased. This trial tactic, while not reversible error in this case, displayed insensitivity on the part of the prosecution toward the dignity and decorum of the proceedings as well as toward the witness. See Rules and Regulations for the State Bar of Georgia, Rule 3-107 (EC 7-36), 241 Ga. 697, 707 (1978). "While a [prosecutor] is necessarily a partisan, yet it is his paramount duty 'to subserve public justice' [cit.], and not merely to convict each defendant charged with a violation of the laws of this State. 'While the safety of society requires the faithful prosecution of offenders against the laws, the State does not ask their conviction but upon *calm and dispassionate* investigation of the charges against them.' [Cit.] Thus, while we expressly disapprove the conduct of the [prosecutor], we are not prepared to hold that it requires the grant of a new trial," (emphasis supplied; *Brown,* supra at 865) since it is highly probable, considering all the evidence, that the testimony of this witness did not contribute to the jury's verdict. *Johnson v. State,* 238 Ga. 59 (230 SE2d 869) (1976). See *Brown v. State,* 118 Ga. App. 617 (1) (165 SE2d 185) (1968).

As to the photograph showing the deceased with his son, "photographs. . .which are posed, which are substantially different from the facts of the case, and which because of the difference might well be prejudicial . . .should not be used, and this is especially true where the situation or event sought to be depicted is simple, the testimony adequate, and the picture adds *nothing except the visual* image to the mental image already produced." *Eiland v. State,* 130 Ga. App. 428, 429 (203 SE2d 619) (1973). However, upon admitting the photographs into evidence, the trial court instructed the jury, "You'll disregard the fact that a child is shown in one of the pictures. Do not take that into consideration. The pictures are offered to identify the deceased person, and they're admitted for that purpose." In light of this cautionary instruction, the trial court did not abuse its discretion in admitting the subject photograph into evidence. See *Alexander v. State,* 239 Ga. 108 (1) (236 SE2d 83) (1977); *Smith v. State,* 202 Ga. 851 (12) (45 SE2d 267) (1947); *Perkins v. State,* 152 Ga. App. 101 (2) (262 SE2d 158) (1979).

7. During cross examination the prosecutor questioned Daniels regarding previous statements made to a police officer which were inconsistent with his testimony at trial. Daniels contends that the trial court erred in permitting this line of questioning without first ascertaining the voluntariness of the in-custody statements. Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964). However, after the cross examination of Daniels concerning his previous

statements, the prosecution offered the testimony of the police officer to whom Daniels had made the statements. The officer testified that Daniels was advised of his constitutional rights before questioning. The officer then related the statements Daniels had made to him following the shooting and was subsequently cross examined by Daniel's counsel. Daniels made no objection to the police officer's testimony. The principle of law applicable in a situation such as this is "that even erroneous admission of evidence will not be grounds for reversal if the same evidence was admitted elsewhere without objection." *Brown v. State,* 129 Ga. App. 152, 153 (198 SE2d 909) (1973). Therefore, Daniel's final enumeration of error is without merit.

*Judgment affirmed. Quillian C. J., concurs. McMurray, P. J., concurs in the judgment only.*

DECIDED APRIL 17, 1981 —
REHEARING DENIED MAY 6, 1981

*Frank K. Martin,* for appellant.
*William J. Smith, District Attorney, J. Gray Conger, Assistant District Attorney,* for appellee.