### ROBERT WILLIAM TIPTON *v.* STATE OF MARYLAND

[No. 1170, September Term, 1977.]

*Decided June 12, 1978.*

The cause was argued before DAVIDSON, MELVIN and LISS, JJ.

*Ferdinand J. Mack* for appellant.

*Deborah K. Handel, Assistant Attorney General,* with whom were *Francis Bill Burch, Attorney General, Gilbert H. Robinette, Assistant Attorney General, Robert C. Nalley, State's Attorney for Charles County,* and *Richard Starkey, Deputy State's Attorney for Charles County,* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

Appellant, Robert William Tipton, was convicted by a jury in the Circuit Court for Charles County of the crimes of manslaughter by automobile and of operating a motor vehicle while intoxicated by the consumption of alcohol. Sentences were imposed and it is from these judgments that this appeal was filed.

The facts as presented at trial indicate that on April 12, 1977 the appellant, after having stopped at a tavern, was operating his truck along a rural road in Charles County. The appellant when he was 15 years old had sustained injuries which resulted in a bilateral shoulder disarticulation which left him with no arms or stumps of arms. The record indicates that he had been operating motor vehicles of various descriptions since he left school in the ninth grade and had had a driver's license for about 10 years.

Appellant passed his driver's test in a conventionally equipped automobile with automatic transmission, power brakes and power steering. The license issued to the appellant by the Department of Motor Vehicles had a restriction noted on it requiring that he only operate a vehicle equipped with foot controls. The evidence was that this equipment could be installed only on a Ford vehicle by a company in California, and because of the costs involved the appellant had not had them installed in the various vehicles which he operated. Instead, he operated his conventionally equipped truck with his feet but without the specific foot controls required by the restrictions. In addition to the truck, he operated his own car and several other vehicles in the course of his employment. During the 10 years in which he was licensed, he was involved in two minor accidents, and on neither occasion was he charged with violating the restriction on his license.

On the night of the accident the appellant had spent three and one-half hours in the bar and admitted that he consumed six drinks during that time. Testimony of the witnesses as to his sobriety when he left the bar ranged from "normal" to "not sober." There was no evidence of excessive speed and the skid marks indicated that he was traveling at about 45 m.p.h. in a 50 m.p.h. speed zone.

The decedent, Andrew Halstead, and a companion were walking for the purpose of observing the stars, in a southbound direction in the west lane of the road known as Chapel Point Road. They saw the appellant's truck approaching and stepped near the edge of the road with the decedent standing approximately six inches from its edge. The truck's low beam headlights were on and the appellant was engaged in conversation with a fellow employee in the truck. The appellant's truck veered to the wrong side of the road, and struck the decedent. The appellant stated that he did not see the decedent until after he struck him and he landed on the hood of the truck. Just before the appellant struck the decedent the other employee yelled "look out" but the warning came too late. Appellant drove to a nearby house to summon the police and an ambulance. The occupant of the house testified that when he saw the appellant he was having difficulty standing up because of intoxication. The police officer who was dispatched to the scene testified that he observed:

> "[A] strong odor of alcohol on his breath. His color appeared to be normal. His clothes were mussed. His eyes were watery and moderately bloodshot. While he was standing there talking to me he was constantly swaying. His attitude was extremely polite and his speech was slurred and confused."

The officer also testified that there were no foot controls on the floor of the appellant's vehicle.

Appellant testified that although he is a double amputee he never had a problem operating with his feet and toes an ordinary motor vehicle equipped with power steering, power brakes and automatic transmission. He stated that his left

leg, the one with which he steers, was hurting him the night of the accident but that this did not impair his driving. The jury was shown a video cassette of the appellant operating a vehicle.

Appellant presents four issues for determination:

"1. Did the court err in receiving in evidence in a case where the charge was manslaughter by automobile, evidence that a restriction on appellant's operator's permit required him to use foot controls in the operation of his motor vehicle, which were not installed in his vehicle?

"2. Did the court err in instructing the jury in a manslaughter by automobile case that they 'may infer or might infer' a wanton and reckless disregard for human life, and find gross negligence, if they found the defendant had become voluntarily intoxicated, without telling the jury what an inference was, upon what it might be based, or in any way explaining further this instruction?

"3. Are the actions of a driver in a fatal collision, immediately following the accident, relevant in a manslaughter case as bearing on the issues of criminal negligence and a reckless disregard for human life?

"4. Where the evidence showed that the decedent was guilty of negligence, causally connected to his death, did the court err in refusing to instruct the jury that they should consider that conduct in determining whether appellant breached a duty to the decedent, and whether any such breach of duty was a proximate cause of the decedent's death? "

1.

Maryland Code (1957, 1977 Cum. Supp.) Art. 27, Section 388 provides in pertinent part:

"Every person causing the death of another as the

result of the driving, operation or control of an automobile, motor vehicle, motorboat, locomotive, engine, car, streetcar, train or other vehicle in a *grossly negligent* manner, shall be guilty of a misdemeanor to be known as 'manslaughter by automobile, motor vehicle, motorboat, locomotive, engine, car, streetcar, train or other vehicle,' and the person so convicted shall be sentenced to jail or the house of correction for not more than three years, or be fined not more than $1,000.00 or be both fined and imprisoned." (Emphasis supplied).[1]

Before the trial on the merits began, appellant filed a motion in limine requesting the trial court to prevent the State from introducing evidence of the restriction on appellant's driver's license and his failure to comply with that restriction. Appellant urged that under the holding in *Davis v. Gordon,* 183 Md. 129, 36 A. 2d 699 (1944), the question of whether he was licensed or unlicensed was irrelevant to the issue of whether he had been grossly negligent in the operation of his automobile.

In *Davis,* the Court of Appeals had before it a case involving a civil action charging negligence and held that questions inquiring into whether the operator of the vehicle was licensed to drive were improper. The Court stated:

"The defendant was not being tried on a warrant charging him with driving without a license, the charge was a civil suit asking damages caused by his negligence. This question is only asked for the purpose of prejudicing the defendant and inflaming the jury. The only question for the jury to decide was

---

1. We note that during its 1978 Session the Legislature passed Senate Bill 318 which creates Section 388A to Art. 27, providing in pertinent part:

"(B) Any person causing the death of another as the result of his *negligent* driving, operation or control of a motor vehicle while intoxicated is guilty of a misdemeanor to be known as 'homicide by motor vehicle while intoxicated,' and the person so convicted shall be punished by imprisonment for not more than two years, or by a fine or [*sic*] not more than $1000.00 or both fine and imprisonment." (Emphasis supplied). This bill was signed into law by Acting Governor Blair Lee on May 16, 1978 as Ch. 454 of the Laws of 1978.

whether the defendant was negligent, and as a result of his negligence the plaintiff's decedent was killed." *Id.* 183 Md. at 132.

*See: Tri-State Truck and Equipment Co., Inc. v. Stauffer,* 24 Md. App. 221, 330 A. 2d 680 (1975).

We find the reasoning of *Davis v. Gordon* inapposite to the facts in this case. We are here concerned with a case in which the appellant is charged with gross negligence in the operation of his automobile. We defined gross negligence in *Boyd v. State,* 22 Md. App. 539, 550, 323 A. 2d 684 (1974) as follows:

> "It is abundantly clear from the cases that the General Assembly of Maryland imported into the Code the common law concept and meaning of gross negligence. Proof of simple negligence will not support a conviction of manslaughter. Whether the statutory standard 'in a grossly negligent manner' has been violated depends upon whether the conduct of the defendant, *considering all the factors of the case,* was such that it amounted to a 'wanton or reckless disregard for human life.'" (Footnote omitted; emphasis in original).

*State of Maryland v. Chapman,* 101 F. Supp. 335 (1951).

The trial judge in ruling on the motion in limine was initially required to determine whether the evidence of the restriction on appellant's license was relevant to the issue of his alleged wanton or reckless disregard for human life. Relevant evidence has been defined as evidence which in some degree advances the inquiry, has probative value and is prima facie admissible. McCormick, *Evidence* Section 185 (Cleary ed. 1972). We believe, for example, that if appellant's license had been restricted to operating a vehicle only while using eyeglasses and an accident occurred while the appellant was not wearing eyeglasses, that fact would be admissible as one of the factors to be considered in the case. *Cf.: Boyd, supra* at 552, n. 2 (driving at night with prescription sunglasses when restriction required use of eyeglasses).

In the case *sub judice,* the restriction on the license was,

we believe, relevant to the issue of wanton and reckless disregard for human life. After determining the relevance of the evidence, there was one other consideration to be weighed by the trial judge before he reached his decision on the motion in limine, *i.e.*, whether there were counterbalancing factors which outweighed the probative value of the evidence sought to be offered. McCormick identifies these counterbalancing factors in the order of their importance as follows:

> "First, the danger that the facts offered may unduly arouse the jury's emotions of prejudice, hostility or sympathy. Second, the probability that the proof and the answering evidence that it provokes may create a side issue that will unduly distract the jury from the main issues. Third, the likelihood that the evidence offered and the counter proof will consume an undue amount of time. Fourth, the danger of unfair surprise to the opponent when, having no reasonable ground to anticipate this development of the proof, he would be unprepared to meet it. *Id.* at 439-40.

In this case only the first two counterbalancing factors are germane to the admission of the evidence sought to be excluded by the motion in limine and these may be considered together. As we perceive the evidence in this case, the trial court's decision to admit the license restriction into evidence was not prejudicial to the appellant's case. It opened the door to the appellant to put before the jury evidence that he had been operating standard vehicles for a period of 10 years with only minor incidents, and it permitted him to show the jury a video cassette which demonstrated how he was able to operate his vehicle with his feet without the need for foot controls. All of this evidence came in without objection. If anything, it was more likely to impress the jury with the remarkable skills developed by the appellant in overcoming his handicap. It seems clear to us that the evidence that the appellant was under the influence of alcohol, that he was on the wrong side of the road when he struck the decedent and that he was obviously inattentive immediately prior to the

accident were the controlling factors in the jury's determination that the appellant was guilty of gross negligence. Nor do we think that the evidence of the restricted license was a side issue which distracted the jury from the principal issue. In any case, the balancing of the intangibles — probative value against probable dangers — is essentially a discretionary matter to be determined by the trial judge and in the absence of an abuse of that discretion it will not be disturbed on review. *See: Cohen v. State,* 173 Md. 216, 195 A. 532, *cert. denied,* 303 U. S. 660 (1937); *Roberts v. State,* 4 Md. App. 209, 241 A. 2d 903 (1968) (per curiam); *Huber v. State,* 2 Md. App. 245, 234 A. 2d 264 (1967); *Punch v. United States,* 377 A. 2d 1353 (D.C. App. 1977); *State v. Anderson,* 253 S. C. 168, 169 S.E.2d 706, *cert. denied,* 396 U. S. 948 (1969).

In view of our conclusion that the probative value of the evidence sought to be excluded was not substantially outweighed by the danger of unfair prejudice or confusion of issues, we find no abuse of the trial court's discretion.

### 2.

Appellant contends that it was error for the trial court to refuse to define for the jury the words "may infer or might infer" in the following jury instruction:

> "The Court instructs you that if you find from the evidence that the defendant was intoxicated, and I will give you a definition of intoxication later, you might, you may infer or might infer that to voluntarily put yourself into a position to be intoxicated would show a wanton and reckless disregard for human life, to drive a motor vehicle in that condition and that such disregard coupled with other facts, as related, would amount to gross negligence."

Though it is true that a trial court should give an instruction on every point of law essential to the crime charged and supported by the evidence, it is not necessary that the court give a requested instruction if the matter is fairly covered in the instructions actually given and the jury

is not misled on the subject. *Bartholomey v. State,* 260 Md. 504, 273 A. 2d 164 (1971); *Raley v. State,* 32 Md. App. 515, 363 A. 2d 261 (1976), *cert. denied,* 278 Md. 731, *cert. denied,* 97 S. Ct. 2921; *England v. State,* 21 Md. App. 412, 320 A. 2d 66 (1974), *aff'd,* 274 Md. 264 (1975). Our reading of the trial court's entire charge convinces us that it was clear to the jury that the court was advising them that they had the right to draw certain conclusions from the facts testified to in evidence provided that they found those facts to be true. *See: Evans v. State,* 28 Md. App. 640, 349 A. 2d 300 (1975), *aff'd,* 278 Md. 197, 362 A. 2d 629 (1976).

### 3.

Appellant next argues that the trial court erred by refusing to deliver to the jury a requested instruction to the effect that evidence of the appellant's responsible conduct after the accident could be considered on the issue of whether he acted in a grossly negligent manner at the time of the accident. In support of this contention the appellant cites *Blackwell v. State,* 34 Md. App. 547, 559, 369 A. 2d 153 (1977), wherein we stated that evidence of the appellant's "flight from the scene was proper for the jury to consider and may give rise to an inference of guilt . . . and indeed of a reckless disregard for human life." He reasons that if bad conduct can show the presence of gross negligence then good conduct can show its absence. The homicide at issue in this case was an unintended one, *Blackwell v. State, supra* at 554, and it is therefore unlikely that the appellant's responsible actions after the accident evidenced his state of mind at the time of the accident. Nevertheless, evidence of the appellant's responsible actions was presented to the jury, the refusal to instruct on its possible effect being the only ground of this contention. Counsel made this argument to the jury. This leads us to conclude that any error which may have occurred was harmless beyond a reasonable doubt as the jury was free to draw whatever conclusions it saw fit from the appellant's conduct after the accident. *Dorsey v. State,* 276 Md. 638, 350 A. 2d 665 (1976).

To buttress his contention, the appellant urges that the

closing argument of the prosecution to the effect that appellant's conduct after the accident was irrelevant as to his state of mind compounded the trial court's error. The record in this case did not include the closing argument of appellant's counsel and for this reason we are unable to determine the net effect which the prosecution's argument had on the jury.

4.

Finally, the appellant contends that it was error for the trial court to refuse to deliver a requested instruction as to the possible effect of the decedent's contributory negligence on the issue of whether the appellant's gross negligence was a proximate cause of the accident. In this regard we note "that where criminal negligence is the proximate cause of death, the fact that negligence of the victim may have concurred in producing the result would have been no defense." *Blackwell v. State, supra* at 559, n. 3; *Annot.,* 20 A.L.R. 3d 473. The court did instruct the jury:

> "There is also the fact that the defendant alleges that the victim was not walking on the left side of the roadway facing oncoming traffic.
>
> "The statute, the law does require that an individual walk to the left side of the roadway, facing oncoming traffic. That is a factor to be considered by you in determining, in light of all other circumstances, whether or not the defendant was guilty of wanton and reckless disregard of human life, to determine whether he is guilty of gross negligence."

This instruction adequately covered the legal point raised by the appellant's proposed instruction. We find no error.

*Judgments affirmed; costs to be paid by appellant.*