61902. HARDY et al v. THE STATE.

POPE, Judge.

Timothy Hardy, Eric Perdue and Troy Smith, sophomore students and members of the varsity football team at Morris Brown College, were indicted by the grand jury of Fulton County for the offense of rape. At trial the state presented testimony of the complainant-victim and others tending to establish the following facts.

The prosecutrix, who was also a sophomore at Morris Brown and a majorette, had made a very low grade on an accounting test. Her professor advised her to seek tutoring and she asked Perdue, who had made the highest grade in the class, if he would help her with her work. He agreed, if she would pay him, and they decided that the prosecutrix would come to his dormitory room to study at 7 p.m. on Sunday evening. Gaines Hall, where Perdue roomed, was the "football dorm." Female visitors were allowed during the visiting hours of 7 p.m. to 10 p.m. in all other dorms. Although there were no rules published in the student handbook or posted in the football dorm against female visitors, there was apparently an understanding

on campus that such visits were not encouraged during football season. At the appointed time the prosecutrix went to the main desk at Gaines Hall and requested of the housemother to see Perdue. He was paged and finally located by another student, Darron Odums, and came down from his third floor room to meet the prosecutrix. At that time Perdue's girlfriend also arrived, but when the prosecutrix explained that she was going to study with Perdue, the girlfriend left. Instead of going up the main stairway inside the building to his room, Perdue led the way and the prosecutrix followed him up an outside, dimly-lit stairway. The assignment for the next day was very long and too complicated for the prosecutrix to understand, so she asked to copy Perdue's completed work to take back to her room to study on her own; he agreed. While she was copying the work, appellant Smith, Perdue's roommate, came in the room and clicked the overhead light off and on. Smith and Perdue left the room and came back. Perdue told the prosecutrix he did not want her to pay him money, he wanted something else. Before they could finish the conversation, Smith came back in the room, cut off the lights and threw her on the floor. When she fought off his advances, he threw her on Perdue's bed. She was "screaming, hollering and calling the Lord," when Perdue came in with appellant Hardy. Someone put a hand over her mouth, turned the music up loud and Smith, then Perdue, then Hardy raped her, the other two holding her arms and legs while each one had his turn. The prosecutrix dressed in a blue jean skirt, plaid blouse and windbreaker had been wearing curlers in her hair which were loosened and knocked off during the struggle. In tears, she rearranged her clothes and picked up her curlers, leaving the room to find a crowd of football players standing in the hall who jeered and mocked her. Darron Odums, however, offered to walk her home and attempted to calm her. Back in her dorm when her friends and roommates inquired why she was upset and crying, she would only say, "They're going to pay." After calming down she finally told the whole story, and the police and security were called and the appellants were arrested. A security officer had heard "a scream" during the time the rape was alleged to have occurred but could not determine where it came from. Perdue's girlfriend told investigators she found bloody "linen" or a towel on Perdue's bed when she came to his room shortly after the incident. The prosecutrix was taken to the Rape Crisis Center at Grady Hospital, where the examining physician found spermatazoa and bleeding caused by a three centimeter laceration at the posterior end of her vagina which required two sutures to close. In the doctor's opinion the injury was "caused by forceful entry or excessive force by the entry of the male sexual organ . . ." There were no other cuts or bruises or external signs of injury to the prosecutrix.

The appellants and a number of their teammates and fraternity brothers testified that the prosecutrix was known to be sexually active with a predilection for football players. Perdue swore that he was a regular churchgoer, kept a 3.5 grade point average and was offered football and academic scholarships to at least six colleges. He agreed to help the prosecutrix with her accounting homework if she paid him, but when he asked her on the way up to his room how she was going to pay, she said she had no money "and smiled and said we'll think of something." He "started asking her about income statements and classified balance sheets and debits and credits and stuff like that and she didn't understand none of it." Smith, his roommate, was in their room lying on his bed reading economics when Hardy came in. Smith then moved to Perdue's bed and asked the prosecutrix to join him there. She did and they began talking "about having sex." The prosecutrix then lay back on the bed, Smith pulled off her panties and "began having sex" while Perdue and Hardy looked on "shocked." They both recovered, however, and decided they would like to have sex with her, too. Perdue then "walked over to her and I unbuttoned my pants and she laid there with her legs open and we began to have sex." Although Perdue withdrew before ejaculation, he agreed that he was "a pretty big guy all over" and "might have been the young man that caused the vaginal laceration." Hardy also took his turn with no communication between him and the prosecutrix. The three appellants testified that the prosecutrix then walked from the room indicating no signs of distress, but that when she got out in the hall, a crowd of their friends began "joaning" and berating her about her shameful sexual habits, at which time she burst into tears and ran home. Darron Odums said he accompanied her only because he thought he might get her to come to his room, too.

The trial court instructed the jury as to the elements necessary to constitute rape and further charged, pursuant to request by the state and over objection of the defense, that "should you find the defendants not guilty of rape as I have charged you, you would be authorized to consider under the evidence whether or not they did at the same time and place commit the lesser offense of simple battery. In that connection, I charge you that the law of this state provides that a person commits simple battery when he either intentionally makes physical contact of an insulting or provoking nature with the person of another or intentionally causes physical harm to another."[1]

---

[1] The entire charge was repeated at the request of the jury who informed the court that "after four hours of [closing] argument . . . they were not very attentive when the law was charged." The same exception to the instruction on simple battery was again taken.

After announcing twice that they were hung, the jury finally returned a verdict of guilty of simple battery. The appellants moved for judgment of acquittal notwithstanding the verdict which was denied. Appeal is taken from the jury instruction on simple battery and the overruling of the motion for judgment of acquittal n.o.v.

The appellants contend that while simple battery is normally considered a lesser included offense of the crime of rape, any alleged touching of the complainant here was in every instance a part of the alleged rape or was totally lacking in intent to commit a crime. The appellants' position is that physical contact is unlawful only if it is without valid consent and causes bodily harm to the person of another, or if the physical contact is of an insulting or provoking nature done without the lawful authority to do so. Thus, it is argued, under the standard set forth in *State v. Stonaker,* 236 Ga. 1 (222 SE2d 354) (1976), the erroneous charge on simple battery constituted reversible error and appellants' convictions were unauthorized as a matter of fact and law because there was no application of force without the consent of the victim and, therefor, no unlawful touching.

There is no question that under the definition of rape in Code Ann. § 26-2001, "against her will" is synonymous with "without her consent." *Gore v. State,* 119 Ga. 418 (46 SE 671) (1903). Courts have generally excluded character evidence because of its acknowledged shortcomings, but apparently because of the possibility of false accusations of sexual abuse in rape cases they departed from the general rule to protect the accused against wild charges of "errant young girls and women." 3A Wigmore on Evidence, § 924a at 736 (Chadbourne rev. 1970); see generally, McCormick, Law of Evidence § 188 (2d ed. 1972).

The purpose of the recently adopted Georgia Rape Shield Statute (Code Ann. § 38-202.1) is to eliminate the philosophy "that women of promiscuous sexual reputation are entitled to less protection under the rape laws than women of chaste reputation." *Singleton v. State,* 157 Ga. App. 192 (1) (276 SE2d 685) (1981). However, since lack of consent is a necessary element of the offense of rape, the defense is still permitted to offer evidence of unchaste character tending to show that the victim consented to the act. Code Ann. § 38-202.1 (a). The procedure for introducing such evidence is for the defense to "notify the court of such intent, whereupon the court shall conduct an in camera hearing to examine the defendant's offer of proof ... [T]he court shall by order state what evidence may be introduced by the defense at the trial of the case and in what manner the evidence may be introduced." Code Ann. § 38-202.1 (b).

Proof of present consent in a rape trial, then, is different from

proof of consent to any other crime. In other crimes the proffered evidence and the inference it supports must logically relate within a particular factual context. For example, it is well established by decisions of both appellate courts that evidence of general character for violence of the victim, or testimony concerning specific acts against another, is impermissible. E.g., *Black v. State,* 230 Ga. 614 (198 SE2d 314) (1973); *Barrett v. State,* 140 Ga. App. 309 (4) (231 SE2d 116) (1976). In rape cases, however, proof of prior consent without regard to identity of persons or similarity of circumstances may be admitted to allow the jury to weigh, or calculate as it were, the probability of consent with respect to an entire class of "unchaste" women when the court finds that the evidence "supports an inference that the accused could have reasonably believed that the complaining witness consented to the conduct complained of." Code Ann. § 38-202.1(a). Since the victim is not the defendant, the court does not consider any prejudice to *her* that admission of sexual history evidence may allow as against its probative value; nor is she provided any right of appeal against a finding of admissibility. Once the pertinence of a woman's lack of chastity, and hence its admissibility, is determined at the in camera inspection, this character trait may be proved.

Therefore, in the present case the jury was allowed to scrutinize in intimate detail not just the matter of previous sexual intercourse on the part of the prosecutrix, but her use of birth control, her past dates and boyfriends, and the number and circumstances of her prior sexual experiences.[2] Compare *Parks v. State,* 147 Ga. App. 617 (249 SE2d 672) (1978). The appellants, on the other hand, had only to reiterate their versions of the events that occurred at the time of the alleged crime, bolstered by testimony from their teammates, fraternity brothers, coaches and their mothers as to their diligence in academic pursuits and regular church attendance. We note only that under the law as it now exists, despite the attempted reforms, our review of this trial record convinces us that a jury may still acquit or convict a defendant accused of rape upon spurious assessments of the complainant's character which are simply not relevant to present day consent.

Having been acquitted of rape, the crime the appellants were charged with committing, does the evidence support their conviction

---

[2] The record before this court is silent as to whether the requisite in camera hearing was held and contains no order stating what evidence was allowed. From the lack of objections by the state to this evidence, we presume that the correct procedures were followed.

of simple battery as a lesser included offense? " ' "To warrant conviction of a lesser offense on an indictment or information charging a greater offense, it is essential that the allegations describing the greater offense contain all essential averments relating to the lesser offense or that the greater offense necessarily include[s] all the essential ingredients of the lesser." ' " *Tuggle v. State,* 145 Ga. App. 603 (1) (244 SE2d 131) (1978). The essential averments of the crime of rape are penetration (which is not in issue here) of the female by force and against her will. Code Ann. § 26-2001. "An assault, or assault and battery, is necessarily involved in every case of rape. [Cits.] In all cases where the defendant is charged with rape, and where the evidence under any view thereof, would authorize a conviction for a lesser offense necessarily involved in the graver charge, the jury should be instructed that he may be convicted of the lesser offense. [Cits.] Where all of the evidence shows either the completed offense as charged, or no offense, such evidence will not support a verdict for one of the lesser grades of the offense, and the court should not charge on the lesser grades of the offense." *Sims v. State,* 203 Ga. 668, 670 (2) (47 SE2d 862) (1948). "Simple battery, on the other hand, requires that the accused intentionally make physical contact of an insulting or provoking nature with the person of another or intentionally cause physical harm to another. Criminal Code § 26-1304. It will thus be seen that every battery necessarily includes an assault, which is but an attempted battery [Cit.] . . ." *Tuggle,* supra at 604.

We do not agree with the appellants that the evidence in this case shows rape or nothing, and that it was therefore error to charge on simple battery. Even assuming, as we must, that the prosecutrix invited or welcomed the attentions of the three appellants in the manner in which they described the sexual encounters, the state introduced undisputed evidence that such force was used that it caused a three centimeter laceration of her vagina and profuse bleeding. We think this evidence was sufficient to authorize the jury instructions on simple battery as a lesser crime involved in the main crime charged and the verdict of guilty.

The consent which the jury found to the acts of sex was based on proof of the complainant's unchaste character. That evidence is immaterial and unsupportive of a finding of consent to the physical harm she suffered during sexual intercourse so as to render the injury a lawful touching as urged by the appellants. We agree that the offense of rape necessarily includes a "physical contact of an insulting or provoking nature" as defined by Code Ann. § 26-1304 (a) and that a finding of consent to sexual intercourse would neutralize any insulting or provoking nature of such contact. However, under Code

Ann. § 26-1304 (b) a simple battery also occurs when a person "intentionally causes physical harm to another." There is no question that the prosecutrix suffered physical harm caused by the appellants; whether or not it was intentionally caused was a question of fact for the jury. (For discussion of what acts constitute conformance with an indictment charging that the defendant "did intentionally cause physical harm," see the progressive appeals in *Mize v. State,* 131 Ga. App. 538, 540 (1) (206 SE2d 530) (1974); 135 Ga. App. 561 (1) (218 SE2d 450) (1975); 140 Ga. App. 17 (230 SE2d 81) (1976)).

" ' "A person will not be presumed to act with criminal intention, but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." Code Ann. § 26-605. Whether the requisite intent is manifested by the circumstances is a question for the trier of fact, and, on review, this court will not disturb the factual determination unless it is contrary to the evidence and clearly erroneous.' " *Riddle v. State,* 145 Ga. App. 328, 330 (243 SE2d 607) (1978). Our review of the trial transcript satisfies us that any rational trier of fact could have reasonably found from the evidence presented by the state proof of the essential elements of simple battery beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Cf. *Daniels v. State,* 158 Ga. App. 476 (1) (282 SE2d 118). Unless a verdict of acquittal is demanded by the evidence or as a matter of law, the refusal to direct a verdict is not error. *Collins v. State,* 243 Ga. 291 (7) (253 SE2d 729) (1979); *Roberts v. State,* 158 Ga. App. 309 (3) (279 SE2d 753) (1981).

*Judgment affirmed. Quillian, C. J., and McMurray, P. J., concur.*

DECIDED SEPTEMBER 11, 1981 —
REHEARING DENIED OCTOBER 8, 1981 —

*Louis K. Polonsky,* for appellants.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Richard Hicks, Assistant District Attorneys,* for appellee.