474 A.2d 1369

**Adrian Alonzo JOYCE**

v.

**STATE of Maryland.**

**No. 1193, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

May 16, 1984.

Ellen Luff, Annapolis, with whom was Gill Cochran, Annapolis, on the brief, for appellant.

Ann E. Singleton, Asst. Atty. Gen., with whom was Stephen H. Sachs, Atty. Gen. of Maryland, Warren B. Duckett, Jr., State's Atty. for Anne Arundel County and Patrick Bell, Asst. State's Atty. for Anne Arundel County on brief, for appellee.

Argued before WILNER, WEANT and BISHOP, JJ.

BISHOP, Judge.

On July 5, 1983, Adrian Alonzo Joyce, appellant, was tried in the Circuit Court for Anne Arundel County (Williams, J.) and convicted of first degree rape. He received a ten year sentence with five years suspended. He argues on appeal that the trial court erred in refusing to hear the testimony of two witnesses who defense counsel proffered would testify that they had observed and participated in multiple

partner sex with the prosecutrix and appellant prior to the alleged rape, to which the prosecutrix had consented. He contends that the testimony should have been admitted because

(a) the court tried the case without a jury;

(b) it was admitted that there were previous episodes of single partner sex between appellant and prosecutrix;

(c) there was no evidence of a weapon, threats, or bodily injury; and

(d) appellant did not have sexual relations with the prosecutrix during the alleged rape.

### Facts

The prosecutrix was fifteen during the incident, and sixteen when she testified at trial. Appellant was seventeen during the incident, and eighteen at trial.

The prosecutrix stated that on November 29, 1982, at approximately 1:00 or 2:00 p.m., she left her home and walked to appellant's house. He was not home, but she waited and eventually he arrived and invited her into his house. A person identified as Brian H. was inside appellant's home when he and the prosecutrix entered. She and appellant went upstairs to watch television in the bedroom. After watching television for awhile, the prosecutrix stated that Brian H. "came upstairs and [appellant] says, 'You're not going to leave unless you have sex with my friend.'" Appellant then grabbed her around the waist and pushed her back onto the bed. Brian H. held her arms while appellant removed her pants, underwear and shoes. Appellant then held the prosecutrix while Brian H. disrobed, and thereafter had sexual intercourse with her. The prosecutrix stated that she did not consent to sexual relations with Brian H. and resisted by crying, cursing, and swinging her hands. Appellant had stopped holding her down, but Brian H. was still on top of her and she could not escape.

While Brian H. had sexual relations with the prosecutrix, three other men entered the bedroom. The prosecutrix

testified that appellant, "got a belt and started hitting Brian [H] on the tail saying, 'Stop, man.'" Brian H. laughed "and jumped up and down on me." She further stated that when Brian H. got off her:

"... these other guys came over and they held me by my arms and legs and said they were going to get some of this before they leave and this guy, he laid on top of me....

Q. Who was this? Do you know?

A. No. I don't know him. And then Brian [H] said he was taking too long and he got him off the top of me. And then John [L] was standing there and he said, 'Can I do this?' and I said, 'No.' And then Brian [H] said, 'Go ahead.' John [L] was scared so they pushed him on the bed and he laid on top of me. Then [appellant] said 'Get John [L] off of her....' And that's when Brian... told John [L] to get off me. And he got off of me.

Q. How many fellows were in the room at any particular time while you were there?

A. About six more guys had came in when Brian and [appellant] were there."

Later in the afternoon, appellant returned to the bedroom. He told the "last guy" having intercourse with the prosecutrix to leave. Appellant had a 6:00 p.m. doctor's appointment to keep. The prosecutrix testified that appellant then:

"... Grabbed me by the hand and he said I had to go downstairs and get myself together. And when I got downstairs he gave me a washcloth and he gave me a towel and he told me I had to wash up because I couldn't go home smelling. And that's when Brian ... came to the bathroom and he got into the shower and took a shower and I washed up in the sink. And then I got dressed and [appellant] was standing by the doorway and he said to go back out in the hall and I said I was leaving and I was going over to the side door or front door and [appellant] said 'You're not leaving.' And that's when

Brian, he grabbed me by the hand and kept me there. [Appellant] said I couldn't leave until after he got through taking a shower and then [appellant] ... took a shower, and he got dressed and came back out into the kitchen and he was standing there and there was a knock at the door. And Brian, he let four more guys in the house and three of them I didn't know, and one of them was one of the guys upstairs I didn't know. So [appellant] said, 'I guess you can leave, now.' And he walked me over to the front door... side door, and he opened the door and he caught the carpet and he says, 'Well, I guess you can't leave now.' So I turned around and I started walking toward the other door and I didn't get far before someone cut out the light and they pushed me in a chair on top of this guy and he held my hands around my back and [appellant] started taking off my pants again, and underwear, and other guys that were there helped him. And then I started crying louder and so he gave me my clothes and I...

Q. Who gave you your clothes?

A. Herman [Appellant] gave me my clothes and I went into the bathroom and I got dressed and came back out. Herman [Appellant] had opened the side door and he told me to leave and he called me a whore and I was ... I left."

The prosecutrix returned home. Her mother was not at home. The prosecutrix telephoned a friend, Helen Y., and told her "what had happened and she told me to call the police." The prosecutrix waited a week to tell her mother about the incident "because I was scared." The prosecutrix stated that she had not consented to the sexual relations that occurred at appellant's home on the day in question.

During direct examination the victim admitted that she had known appellant for three or four years, and that she had previously visited his bedroom to watch television since this was the usual place in appellant's house where television was viewed. During cross-examination, although denying that she was ever "boyfriend/girlfriend or any-

thing of that sort" with appellant, the victim did admit that she had sexual relations with appellant, but did not know how many times. She stated that the first time was on August 30, 1982 about three weeks after she had taken birth control pills. She then admitted that there were at least three occasions, but did not know whether there had been a fourth.

Defense counsel then asked if she knew Darryl Herbert and Terry Hutton. She admitted knowing Darryl, but denied knowing Terry. Upon continued cross-examination, the victim denied that anyone else had been in the house when she had sexual relations with appellant. The victim was then cross-examined about the alleged rape incident.

The victim's friend, Helen Y. testified for the State, without cross-examination, and the State rested its case. A defense motion for acquittal was denied.

When Terrence (Terry) Hutton, the first defense witness was called, defense counsel proffered that he was "going into an area which is contained in 461A..." to which the State objected. After establishing that Hutton was acquainted with appellant, and had seen the victim in July or August of 1982 with appellant at appellant's house, and after an objection, defense counsel proffered that the basis for the testimony was "461A1" (presumably 461A(a)(1)) "Evidence of victim's past sexual conduct with the defendant... and we might find that that not only was with defendant... I want to find out what circumstances...." The State and the court pointed out that she had admitted sexual relations with appellant. At this point defense counsel asserted that the evidence was admissible under (a)(3) "Evidence which supports a claim that the victim has an ulterior motive in accusing the defendant of the crime;" as well as (a)(1). After several attempts to elicit whether Hutton had sexual relations with the victim, defense counsel threw in (a)(4) as an additional basis and then made the following proffer:

"Your Honor, I will proffer that a (sic) episode took place with Terry Hutton, as well as Darryl Herbert, as well as my client and it was a sexual relationship with [the victim] with four people and it was a voluntary act on or around November and that's what I wish this client to be able to say."

Counsel then substituted August for "November" in the proffer. He made substantially the same proffer with reference to Darryl Herbert. The court found the evidence to be inadmissible and refused to let it in.

Appellant contends primarily that the proffered testimony was relevant and admissible evidence pursuant to Maryland Annotated Code, Article 27, section 461A [1] (a)(1) and secondarily pursuant to (a)(4):

"(a) *Evidence relating to victim's chastity.*—Evidence relating to a victim's reputation for chastity and opinion evidence relating to a victim's chastity are not admissible in any prosecution for commission of a rape or sexual offense in the first or second degree. Evidence of specific instances of the victim's prior sexual conduct may be admitted only if the judge finds the evidence is *relevant* and is *material* to a fact in issue in the case and that its *inflammatory* or *prejudicial* nature does not outweigh its probative value, and if the evidence is:

(1) *Evidence of the victim's past sexual conduct with the defendant;... (Emphasis added.)*

$$* \quad * \quad * \quad * \quad * \quad *$$

(4) Evidence offered for the purpose of impeachment when the prosecutor puts the victim's prior sexual conduct in issue."

As he did at trial, and almost as an afterthought in next to the last paragraph of his brief, but pushed with some

---

**1.** For a comprehensive discussion of the legislative history of this statute see *Lucado v. State,* 40 Md.App. 25, 389 A.2d 398 (1978).

vigor during oral argument, appellant claims that because of the "counter-vailing proffer", the State "put the victim's prior sexual conduct in issue under (a)(4)," he was then entitled to have the testimony of Hutton and Herbert admitted for impeachment purposes. The exchange to which appellant refers occurred after the second proffer which included both Hutton and Herbert, to which the prosecutor responded:

"Your Honor, if I just may offer a countervailing proffer. If the question were asked of [the victim]..., she would deny that she ever had sex with multiple partners."

The short answer to this is that it was not the prosecutor who put the victim's prior sexual conduct in issue, it was the appellant. In addition it really never became an issue to which the State was required to respond because the court refused to admit the evidence in the first place. Appellant's argument on this point is ingenious but specious.

Appellant's main argument in his brief is that he

"...sought to introduce evidence of the Prosecutrix's prior participation with him in a group sexual activities for the purpose of showing, *inter alia,* that there was a greater probability that she would have engaged in consensual group sex with Appellant and his friends on November 29, 1982 than had she never participated in any previous group sexual activities with Appellant."

Appellant contends that under section 461A(a)(1) multiple partner sex is included in "sexual conduct with the defendant" even if "it was also sexual conduct with others." As authority for this contention, appellant cites *People v. Keith,* 118 Cal.App.3d 973, 173 Cal.Rptr. 704 (1981) in which the Court of Appeals of California, Second District, in reversing that appellant's conviction, held that the lower court erred in excluding evidence of intercourse of the victim with anyone other than the defendants, the trial court having found that only defendants were competent to

testify to such acts. The appellate court stated at 118 Cal.App.3d at page 980, 173 Cal.Rptr. 704:

> "It seems clear, however, that in framing this statute the Legislature was not thinking of situations where the defendants offer to prove, through other witnesses, that the complaining witness engaged in group sex with partners some but not all of whom are defendants."

Factually that case differs from the one before us in that it was alleged that the complaining witness had engaged in group sex with at least some of the defendants. In addition, appellant claims that the California appellate court applied a rape shield statute similar to Maryland Annotated Code, Article 27, section 461A. The California statute is different from the Maryland statute. California Evidence Code, § 1103, in pertinent part reads as follows:

> "(1) In a criminal action, evidence of the character or a trait of character (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) of the victim of the crime for which the defendant is being prosecuted is not made inadmissible by Section 1101 if such evidence is:
>
> (a) *Offered by the defendant to prove conduct of the victim in conformity with such character or trait of character.*
>
> (b) Offered by the prosecution to rebut evidence adduced by the defendant under subdivision (a)." (Emphasis supplied.)

The Maryland rape shield law contains no such exemption.

Using as authority *Williams v. State,* 205 Md. 470, 474, 109 A.2d 89 (1954) appellant argues that in order to be relevant proffered evidence only needs to tend to make a factual proposition more probable than not, and that if "there is any doubt, the decision is on the weight of the evidence, not on any admissibility." Appellant contends that:

"The fact that the Prosecutrix had consensual multiple partner sex with Appellant and others has a tendency to show that it is more probable that she would consent to a group sex situation with Appellant than had she never had group sex with him previously."

Next appellant claims that notwithstanding a rape shield law the prior sexual conduct of the victim is admissible because it is probative of the victim's perception and recollection and of her consent, *State v. Ray*, 637 S.W.2d 708 (Mo.1982) and because it may be relevant on the issue of *mens rea. Hardy v. State*, 159 Ga.App. 854, 285 S.E.2d 547 (1981); *Doe v. United States*, 666 F.2d 43 (Ca.4th 1981); *State v. Geer*, 13 Wash.App. 71, 533 P.2d 389 (1975).

None of the foregoing is relevant because the Maryland rape shield law forecloses the admissibility of such evidence on these bases. The Maryland law requires that before evidence relating to the victim's chastity may be admitted, the court must find the evidence is relevant, material to a fact in issue, and its inflammatory or prejudicial nature does not outweigh its probative value and if the evidence falls into one of the four enumerated categories. We find none of the cases cited by appellant from other jurisdictions relevant.

In *State v. Patnaude*, 140 Vt. 361, 438 A.2d 402 (1981), two women accused the two defendants and three other men of gang rape. Both defendants were found guilty. They admitted participating in sexual relations with the women, but claimed that the women had consented. At trial they offered to produce witnesses to testify about prior sexual conduct between the prosecuting witnesses and third persons. The trial judge excluded the evidence under 13 V.S.A. § 3255, the Vermont rape shield statute.

■ On appeal the Supreme Court of Vermont, after discussing the offsetting 6th Amendment interests of the defendants with the interests of the State and the victim, observed that the defendants were not entitled to a weighing of these interests, one against the other, unless the

proffered evidence passed "the tests of logical and then of legal relevancy." In concluding that the evidence failed to pass these tests, the Vermont Court used language which we adopt as dispositive of the issue presented to us in the case *sub judice:*

As a general rule, courts do not allow parties to prove that a person did the thing in question by proving that he or she had in the past done a *similar* thing. *Some special relationship indicating a connection beyond mere similarity* as to some particulars has been required. (Citations omitted.) (Emphasis supplied.)

\*     \*     \*     \*     \*     \*

Inferences cannot be drawn from one transaction to another that is not specifically connected with it merely because the two resemble each other." [Citations omitted.] 438 A.2d at 405–06.

In November of 1982, three men were involved in group sexual activity with the prosecutrix at appellant's house. There were, however, no sexual relations between appellant and the prosecutrix. The proffered testimony sought to establish that three months earlier, during the summer of 1982, the prosecutrix voluntarily had group sexual relations with appellant and three other men. Appellant contends that the facts and his proffered testimony indicate a relevant pattern of behavior: consensual group sex between the prosecutrix, appellant and other men. We do not discern from the proffered testimony "some special relationship indicating a connection beyond mere similarity." *Patnaude, supra,* 438 A.2d at 405. The men ostensibly involved with the prosecutrix in July or August, excepting appellant, were different from the men who were sexually involved with her in November. The circumstances were also dissimilar. Three men and appellant all allegedly had group sex with the prosecutrix that summer. In November three men had group sex with the prosecutrix at appellant's house; however, appellant did not have sexual relations with her on that occasion. Furthermore, a single

prior act "is not probative of present acts; only related patterns of behavior should be admissible." *State v. Patnaude, supra.*

We stated in *Tipton v. State,* 39 Md.App. 578, 586, 387 A.2d 628 (1978) that:

> "...the balancing of the intangibles—probative value against probable dangers—is essentially a discretionary matter to be determined by the trial judge and in the absence of an abuse of that discretion it will not be disturbed on review." (Citations omitted.)

Because the proffered testimony's negligible measure of probative value is outweighed by its prejudicial disvalue of subjecting the prosecutrix to public denegration, and since this is precisely the abuse against which the Maryland rape shield statute was designed to protect, *Lucado v. State,* supra [40 Md.App.] at 35–37, 389 A.2d 398, the trial court did not abuse its discretion in excluding the evidence.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.

WILNER, Judge, concurring.

I concur with the result reached by Judges Bishop and Weant, but I do so by simply construing the Maryland "rape shield" law—art. 27, § 461A.

The evidence proffered by appellant concerned an alleged specific instance of the victim's prior sexual conduct. The statute places three conditions, *all of which must be satisfied,* on the admissibility of such evidence: (1) it must be relevant and material to a fact in issue in the case; (2) its inflammatory or prejudicial nature must not outweigh its probative value; and (3) it must fall within one or more of the four categories enumerated in the statute. It seems clear to me that the proffered evidence did not meet any of those three conditions.

Appellant was not charged in this case with having, himself, had sexual intercourse with the victim. His culpability was in actively restraining the victim so that at least

one other male, Brian H., could have intercourse with her, by force and without her consent. At some point, other males entered the room and some or all of them also had intercourse with the victim, one after another. There was no evidence that appellant actively assisted in these subsequent attacks; indeed, the victim stated that he had left the room for a while. Terry Hutton and Darryl Herbert were not involved in this episode; the record gives no indication that either of them was even present in the house.

The initial proffer, presumably to be established through the testimony of Hutton or Herbert or both was that "a[n] episode took place with Terry Hutton, as well as Darryl Herbert, as well as my client [*i.e.*, appellant] and it was a sexual relationship with [the victim] with four people and it was a voluntary act on or around November...." The proffer was subsequently restated as follows: "that on or around August there was an incident that took place between the defendant, as well... Darryl Herbert as well as Terry Hutton as well as perhaps one other individual *unnamed*, with [the victim]. *And it was a sexual act between those five people* with consent [of the victim]." (Emphasis supplied.)

Taking the proffer as stated, appellant wished to show that, on November 29, 1982, the 15-year old victim consented to sequential intercourse with Brian H., John L., and perhaps six other males because in August she had participated in what appeared to be a group sexual encounter with appellant, Terry Hutton, Darryl Herbert, and "perhaps one other individual unnamed." *That* is what we're dealing with in this case.

To me, that proffered evidence plainly is not relevant or material to the issues in this case, its inflammatory nature clearly would outweigh any probative value it might have, and it falls within none of the enumerated categories. That the victim, who admitted a sexual relationship with appellant, may have engaged in "a sexual act" with him, Hutton,

Herbert, and one other male has no bearing whatever on whether she might agree to sequential intercourse with as many as eight other people. Its probative value is therefore virtually *nil*, while the inflammatory or prejudicial nature of such testimony, even in a court trial (open to the public) is obvious. As to the two enumerated categories urged by appellant—§ 461A(a)(1) and (4)—the evidence was unnecessary for purposes of (a)(1) as the victim had admitted past sexual conduct with appellant and, as the majority notes, (a)(4) does not apply because the prosecutor never put the victim's prior sexual conduct in issue.

I therefore would affirm without regard to what courts in Vermont or Missouri or California have done. To me, the Maryland statute is clear and its conditions were not satisfied in this case.