**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**October 18, 2012**

# In the Court of Appeals of Georgia

A12A1450. REDDING v. THE STATE.

MILLER, Presiding Judge.

Following a jury trial, James Redding was convicted of two counts of simple battery (OCGA § 16-5-23 (a) (1)). Redding appeals, contending that the trial court erred (i) in denying his request to instruct the jury that lack of consent is an element of the simple battery offense and (ii) in excluding evidence that the victims' actions were indicative of gang membership. We discern no error and affirm.

Viewed in the light most favorable to the jury's verdict,[1] the trial evidence showed that Redding owned and operated the Coco Loco restaurant bar located in DeKalb County. At approximately 2:00 a.m. on May 8, 2011, the victims, Francisco Fernandez and Emmanuel Tellez, visited Redding's bar. At some point during the

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

visit, Fernandez damaged two of the bar's pool tables by drawing graffiti on them using a marker.

After the graffiti was discovered, a bouncer at the bar approached Fernandez and directed him to go into the bar's back office, where Redding was waiting. Before entering the office, Fernandez attempted to discard the marker by removing it from his pants pocket and dropping it onto the floor. The bouncer nevertheless observed Fernandez's attempt, picked up the marker, and escorted Fernandez into the office. Another bouncer at the bar confronted Tellez, and Tellez was also escorted into the office.

Upon Fernandez's entry into the office, Redding confronted him about the graffiti damage on the pool tables. Fernandez initially denied causing the graffiti damage, and Redding and Fernandez engaged in a physical altercation. After being overpowered by Redding during the altercation, Fernandez surrendered and admitted that he had drawn the graffiti on the pool tables.

Fernandez testified that he offered to pay for the damage to the pool tables, but Redding continued to hold him down against the floor. The bouncer handed Redding the marker that Fernandez had used to draw on the pool tables. Redding used the marker to write the name of the bar across Fernandez's forehead.

Redding then directed his attention toward Tellez. When Redding confronted Tellez about the graffiti on the pool tables, a physical altercation ensued between Redding and Tellez. After overpowering Tellez during the altercation, Redding took the marker and wrote the name of the bar across Tellez's forehead.

After being released from the office, Fernandez and Tellez left the bar and reported the incident to police. Redding later turned himself into police custody and was charged with offenses related to the incident.

Redding testified in his defense at trial. Advancing a claim of "poetic justice" or "frontier justice," Redding admitted that he had written on the foreheads of Fernandez and Tellez. Redding nevertheless claimed that his acts did not constitute the offense of battery since Fernandez and Tellez had agreed to allow him to write on their foreheads in exchange for his agreement not to call the police and not to charge for the damage to his pool tables. Fernandez and Tellez, however, refuted Redding's claim and testified that they had not consented to Redding's acts.

At the conclusion of the trial, the jury found Redding guilty of the simple battery offenses based upon his acts of writing on the victims' foreheads.[2]

---

[2] The jury acquitted Redding of several other charges for battery and disorderly conduct related to the physical altercations. The trial court directed a verdict of acquittal as to other charges pertaining to a third alleged victim.

1. Redding contends that the trial court erred in refusing to give his requested jury charge that consent or the lack thereof was an element of simple battery. We discern no error.

The record shows that the trial court rejected Redding's requested charge, which defined simple battery as physical contact of an insulting or provoking nature that "is not consented to by the other." Instead, the trial court charged the jury on the definition of simple battery by quoting the statutory language of OCGA § 16-5-23 (a) (1): "A person commits the offense of simple battery when he intentionally makes physical contact of an insulting or provoking nature with the person of another." Redding was permitted to give closing arguments that the contact was not insulting or provoking if the physical contact occurred with the victims' consent.

Thereafter, during their deliberations, the jury submitted the following question: "[I]n the definition of simple battery, is the act itself being determined as insulting and provoking, or is the intent of the accused to be determined as insulting and provoking?" Redding requested that the trial court respond to the question by giving his charge defining the offense as involving lack of consent. The trial court, however, did not interpret the jury's question as asking about the victims' alleged consent. Rather, the trial court believed that the jury's question pertained to

4

Redding's intent in committing the act. The trial court responded to the question by giving the jury a recharge, which again defined simple battery in accordance with the language of the statute, informed that a defendant's intent is an essential element of the crime, and stated that the jury would be required to determine whether Redding acted with the requisite intent to commit the act charged.

Redding now contends that the trial court erred in not giving his requested charge since the victims' alleged consent was his sole defense. We disagree.

> If an affirmative defense is raised by the evidence, including the defendants' own statements, the trial court must present the affirmative defense to the jury as part of the case in its charge, even absent a request. The affirmative defense, however, need not be specifically charged if the case as a whole is fairly presented to the jury.

(Citation and punctuation omitted.) *Booker v. State*, 247 Ga. 74 (274 SE2d 334) (1981). It is true that consent or lack thereof is relevant in a case involving simple battery under OCGA § 16-5-23 (a) (1) to the extent that it pertains to the "insulting or provoking nature" element of the offense. See OCGA § 16-5-23 (a) (1); *Ramey v. State*, 203 Ga. App. 650, 652 (3) (417 SE2d 699) (1992); see also *Wells v. State*, 204 Ga. App. 90, 90-91 (418 SE2d 450) (1992) (affirming simple battery conviction based upon defendant's act of touching the victim's breast without her consent); *Hardy v.*

5

*State*, 159 Ga. App. 854, 859-860 (285 SE2d 547) (1981) (affirming simple battery conviction as a lesser included offense of rape; ruling that rape necessarily includes physical contact of an insulting or provoking nature, and that a finding of consent to sexual intercourse would neutralize any insulting or provoking nature of such contact). Lack of consent is implicit in the definition and the application of the simple battery statute. Contrary to Redding's claim, however, lack of consent is not a specified element of the simple battery offense. See OCGA § 16-5-23 (a) (1). Rather, the effect of a consent defense is simply to traverse the State's proof regarding the "insulting or provoking nature" element. See *Felker v. State*, 252 Ga. 351, 363 (1) (c) (314 SE2d 621) (1984).

Redding was allowed to present his consent defense to the jury as a challenge to the "insulting or provoking nature" element. The trial court correctly charged the jury on simple battery by quoting the statutory language of OCGA § 16-5-23 (a). See *Brinkworth v. State*, 222 Ga. App. 288, 288-289 (2) (474 SE2d 9) (1996). "The trial court was not obligated to instruct the jury in the exact language [that Redding] requested; it was sufficient that the same principle of law was fairly covered in the instructions actually given the jury." (Citation omitted.) Id.

6

2. Redding also contends that the trial court erred in excluding evidence that the victims' actions were indicative of gang membership or affiliation. Prior to trial, the State presented a motion in limine to exclude references to the victims' alleged gang membership. In response, Redding agreed that the victims' alleged gang membership was not relevant to show justification, but claimed that it was relevant to explain why fellow gang members entered the office to fight with Redding after his confrontation with Fernandez. After hearing the arguments, the trial court granted the State's motion to exclude the evidence.

Later during the trial, Redding raised the issue again and made a proffer of the testimony of a gang expert, who purportedly would have described the activities and behaviors typically associated with gangs. Redding argued that the gang evidence would explain why Fernandez marked graffiti on the pool tables and why Tellez joined the altercation to defend Fernandez. The trial court again ruled that the gang evidence was inadmissible, reasoning that it was not willing to insert the extremely prejudicial issue of gang membership into the case since the evidence did not clearly establish that the incident was gang related.[3]

_____

[3] The trial court explained that at a prior hearing, the victims testified that although they had previously been members of gangs, they were not members of the same gang, they were no longer affiliated with gangs, and the incident involving

No basis for reversal has been shown. "Whether to admit evidence is a matter resting in the trial court's sound discretion[.]" (Citation and punctuation omitted.) *Boring v. State*, 289 Ga. 429, 433 (2) (711 SE2d 634) (2011). "[A]lthough evidence of the victim's specific acts of violence against third persons when the defendant is claiming justification is admissible, mere membership in a gang is not a specific act of violence. . . . [Moreover,] the victim's character is rarely relevant for any purpose in a criminal proceeding." (Punctuation and footnotes omitted.) *Harris v. State*, 298 Ga. App. 708, 711 (2) (680 SE2d 693) (2009).

Significantly, in his argument to the trial court, Redding claimed that the gang evidence was not offered to show justification, and that it was not relevant for that purpose in this case. Instead, he asserted that the gang evidence was relevant to explain the graffiti and the multiple physical altercations. Redding now contends that the gang evidence was relevant to support his defense that writing on the victims' foreheads was an appropriate remedy to which the victims would have consented. However, he did not argue on this ground in the trial court below. In his arguments to the trial court, Redding never asserted that the evidence was relevant to explain the

---

Redding was not gang-related. The trial court further noted that there was no evidence that the graffiti marked on the pool tables was a gang insignia.

victims' alleged consent to his acts. "It is well settled that a reason urged by enumeration of error on appeal which is different from that urged below will not be considered for the first time on appeal." (Citations and punctuation omitted.) *Watkins v. State*, 206 Ga. App. 701, 705 (3) (426 SE2d 238) (1992). "The attempted shift of grounds waives one and forgoes the other." (Citations omitted.) *Wilkins v. State*, 220 Ga. App. 516, 517 (1) (469 SE2d 695) (1996). Consequently, Redding's newly asserted ground has been waived.

*Judgment affirmed. Ray and Branch, JJ., concur.*