## JONES *v.* STATE

[No. 71, September Term, 1965.]

324

*Decided April 27, 1966.*

The cause was argued before PRESCOTT, C. J., and MARBURY, OPPENHEIMER and McWILLIAMS, JJ., and CHILDS, J., Associate Judge of the Fifth Judicial Circuit, specially assigned.

*Thomas F. Dempsey,* with whom was *James A. Ehrhart* on the brief, for appellant.

*R. Randolph Victor, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Charles E. Moylan, Jr.* and *Malcolm Kitt, State's Attorney* and *Assistant State's Attorney,* respectively, *for Baltimore City* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court. McWILLIAMS, J., dissents.

The appellant, Charles W. A. Jones, was found guilty of robbery in the Criminal Court of Baltimore, by Judge Dulany Foster, sitting without a jury, and was sentenced to thirty months in the Maryland Correctional Institution for Men. The appellant's sole contention on this appeal is that the evidence adduced below was insufficient to justify the trial judge's verdict of guilty.

At the trial, Lucy Schorback, the prosecuting witness, testified that on January 7, 1965, at 12:55 in the afternoon she was walking in the vicinity of the 100 block of Mulberry Street, near the Enoch Pratt Free Library, when three men approached her from the rear and one of them grabbed her shopping bag, which contained food and personal items, including a handbag containing approximately $200. The witness testified that the person who had grabbed the shopping bag wore a coat which she described as being "between a brown and a

tan" in color and that the defendant "looked like" that man although she did not testify that he *was* one of the robbers.

Shortly after the above incident, and less than a block from where it had occurred, Joseph Cziwinski, a taxicab driver, was stopped at the intersection of Park Avenue and Mulberry Street, waiting for the traffic light to change. As the light turned green, he saw three Negro boys dash in front of his cab running in a westerly direction across the intersection, and then run into an alley north from Mulberry Street. Although he did not get a good look at the boys' faces he did notice their heights and that one of them had on a black leather jacket, one had a brown jacket, and he was unable to say how the third was dressed. The cab driver, continuing in a northerly direction, drove to Franklin Street where he made a left turn and then proceeded in the direction of Howard Street. Arriving at Tyson Street he then saw the same three youths emerging from the alley and observed the boy in the black leather jacket with a woman's purse, which he was in the process of "sticking" under his jacket.

The driver then sounded his horn in order to alert a traffic policeman, who was stationed at the corner of Howard and Franklin Streets. At the sound of the horn, according to Cziwinski, the three boys disbanded, two of them going north on Tyson Street, while the third, whom the witness identified in the courtroom as the defendant Jones, walked west, over to the north side of Franklin Street. Jones was immediately apprehended at Howard Street after Cziwinski had informed the arresting officer that "* * * there is one of the three boys that was running down the street, one of them was sticking a pocketbook into his coat." The witness Cziwinski further testified that he could positively identify Jones as one of the youths who had run in front of his cab at Park Avenue and Mulberry by the appearance of his clothes, more particularly the brown jacket which he was wearing at the time he was apprehended.

The only witness who was called to testify for the defense was the twenty year old defendant himself, who, despite his youth, had already been previously convicted of burglary and larceny. Jones testified that he had been job hunting on January 7, 1965, and in the course of his search was walking in

the vicinity of Mulberry Street when he observed a boy grab the prosecuting witness' shopping bag. Defendant Jones testified that he chased the boy into the alley whereupon he noticed another boy running with the first, and that he chased both of them until one ran into a side alley, while the other continued straight. According to Jones he chased one of the boys until he came out onto Franklin Street. He stated emphatically that he did not know either of the boys whom he was chasing and that he had "nothing at all" to do with the crime of which he was accused.

It is our view that four factors, taken together, support the finding by the trial judge that the appellant committed the crime of which he was convicted. Those four factors are: (1) Appellant's presence at the scene of the crime; (2) prosecuting witness' testimony as to the similarity of identity between the defendant and the man who grabbed her shopping bag; (3) appellant's running from the scene of the crime; and (4) appellant's presence with another youth who was attempting, while in the process of fleeing from the scene of the crime, to secrete an item of the kind which was missing from the victim's shopping bag.

In regard to the first factor, the appellant's own testimony placed him at the scene of the crime. Judge Prescott, now Chief Judge, speaking for this Court in *Tasco v. State,* 223 Md. 503, 509, 165 A. 2d 456, used the following language, which is apposite here, in discussing this factor:

> "Of course, it is elementary that the mere presence of a person at the scene of a crime is not, *of itself,* sufficient to establish that that person was either a principal or an accessory to the crime. (Italicized in original.) *Watson v. State,* 208 Md. 210, 117 A. 2d 549; *Judy v. State,* 218 Md. 168, 146 A. 2d 29. *But presence at the immediate and exact spot* where a crime is in the process of being committed is a very important factor to be considered in determining guilt; and in this case the trial court was not required to believe that the appellants were mere observers of a crime that was being committed, nor that it is a case where a crime had been committed one hour, one day

or one week before, and the defendants happened, by chance, to come to the place where the crime had been committed." (Emphasis added.)

With respect to the second factor, we may assume that the prosecuting witness' testimony that the appellant "looked like" the person who took her bag, coupled with her testimony that the man had on a "brown or tan" coat was again not sufficient, standing alone, to justify conviction of this crime. *Cf. Wesbecker v. State,* 240 Md. 41, 212 A. 2d 737; *Barbee v. State,* 239 Md. 329, 211 A. 2d 343; *Booker v. State,* 225 Md. 183, 170 A. 2d 203. But this "coincidence of looks" when coupled with the appellant's admission that he was at the scene of the crime, is strong circumstantial evidence of his guilt of the crime charged.

Thirdly, there was sufficient testimony from which the trier of the facts could have properly found that the defendant fled from the scene of the crime. Based on the taxicab driver's testimony, the trial judge could have found that soon after the robbery the appellant was among those who darted in front of the cab and then ran into the alley but a short distance from where the robbery had occurred. Here the cab driver's identification was based on the appellant's race, his height, and most importantly on the brown jacket he was wearing. The means of identification used here by Cziwinski is analogous to that present in *Bailey v. State,* 226 Md. 353, 173 A. 2d 732, where the prosecuting witness identified the accused as the perpetrator of the crime primarily by the similarity of the clothing worn by the burglar and that worn by the accused when arrested soon after, and in the vicinity of, the crime. In *Bailey* we held that such identification was sufficient to convict. In the instant case there can be little doubt that the defendant did run from the scene of the crime since he admitted doing so, although he characterized his movements as pursuit, rather than flight. The trial judge was not compelled to accept the appellant's asserted motive and it is plain that he did not. While flight alone is not sufficient to convict, it is universally admissible as evidence of consciousness of guilt, and thus of guilt itself. *Davis v. State,* 237 Md. 97, 205 A. 2d 254. See also II Wigmore, *Evidence* § 276 (3d ed. 1940).

Fourthly, the cab driver's positive testimony that he saw the accused emerging from an alley in the company of another male youth, who was also fleeing from the scene of the crime, along with his testimony that the other youth was attempting to secrete a woman's pocketbook under his jacket and the undisputed fact that a woman's pocketbook was one of the items missing from the prosecuting witness' shopping bag, was probative evidence, when coupled with the first three factors above discussed, from which the trial judge could rationally infer beyond a reasonable doubt that the accused participated in its taking.

Proof of guilt beyond *all possible* doubt has never been required in criminal cases, and it is thus "not necessary that every conceivable miraculous coincidence consisent with innocence be negatived." *Hayette v. State,* 199 Md. 140, 144, 85 A. 2d 790. The test to be used by this Court in a case such as the instant one was succinctly put in *Kucharczyk v. State,* 235 Md. 334, 337, 201 A. 2d 683, quoting from *Ponder v. State,* 227 Md. 570, 572, 177 A. 2d 839, in the following manner:

> " '* * * the test of the sufficiency of the evidence in a case tried before the court without a jury, when reviewed in this Court, is whether the evidence, if believed, either shows directly or supports a rational inference of the facts to be proved, from which the court could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged.' "

For the reasons set forth above, we conclude that this test was fulfilled, and affirm the judgment.

*Judgment affirmed.*

McWILLIAMS, J., dissents.