*511 A.2d 45*

James BRITTINGHAM, Jr.

v.

STATE of Maryland.

No. 107, Sept. Term, 1985.

Court of Appeals of Maryland.

July 11, 1986.

Sally C. Chester (Roland, Walker & Walker, Rubin & Van Bavel, P.A., on brief), Baltimore, for appellant.

Deborah K. Chasanow, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

COUCH, Judge.

This case presents questions involving the admissibility of evidence concerning the voluntary nature of an otherwise inadmissible inculpatory statement introduced for the limited purpose of impeaching the defendant's credibility. Since this matter is entirely one of procedural concern, a full recitation of the facts is not necessary.[1] Relevant facts will be incorporated herein where appropriate.

James Brittingham, Jr., petitioner, was charged in the Circuit Court for Baltimore City with various offenses, as

---

1. The facts are more fully set forth in the Court of Special Appeals' opinion. *See Brittingham v. State,* 63 Md.App. 164, 492 A.2d 354 (1985).

the result of an incident which occurred on October 10, 1982. On November 17, 1983 he was found guilty of first degree rape, robbery with a deadly weapon, use of a handgun in the commission of a crime of violence, burglary and false imprisonment.

Prior to trial, Brittingham moved to suppress statements he allegedly made to two different officers, Detective Jansen and Corporal Sheldon. A suppression hearing was held and the first statement, which is not here at issue, was deemed admissible at trial as substantive evidence. The second statement, given prior to the administration of a polygraph examination, forms the basis of this appeal. It was eventually[2] found to have been taken in violation of *Miranda*[3] and was therefore held inadmissible in the State's case in chief. In reaching this determination, the trial judge expressly concluded that the statement was voluntary.[4]

At the trial on the merits, Brittingham took the stand on his own behalf and testified that he had not been to the victims' home on the night of the crime. This testimony directly contradicted the earlier statement given to the polygraph operator, Corporal Sheldon, wherein Brittingham admitted robbing the victims in their home but denied the rape. Under oath Brittingham denied ever telling Corporal Sheldon that he robbed the victims.

---

2. The suppression hearing was held on November 9, 1983. Based on the evidence then presented, the trial court held the statement admissible. However, on defense motion, the hearing was reopened on November 15, 1983. After additional testimony, the trial judge ruled the statement inadmissible in the State's case in chief.

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. This conclusion was made at the close of the first hearing. The issue of voluntariness was not addressed when the hearing was reopened.

In rebuttal, Corporal Sheldon was called, and he recounted the statement Brittingham had made to him.[5]  On direct examination by the State, Sheldon testified that Brittingham had said he had been at the victims' residence on the night of the crime;  he had seen the victims on that date;  several articles were taken from the residence;  and he left the residence in a vehicle belonging to the victims.  Sheldon also testified that in his presence no one threatened, coerced, or promised anything to Brittingham in return for the statement.  On cross-examination, Sheldon testified that in the statement at issue Brittingham had denied raping the female victim and that Brittingham had been advised of his rights pursuant to *Miranda* prior to making the statement. Defense counsel also successfully established, *inter alia,* that Sheldon was a polygraph operator and the statement was made just prior to the administration of a polygraph examination which had been scheduled at the defendant's request.  However, the court sustained the State's objection when the defense asked Sheldon whether there had been any question about postponing the test so that Brittingham's lawyer could be present.

On surrebuttal, defense counsel sought to demonstrate that the statement to Sheldon was involuntary.  A paralegal, a State's Attorney investigator, and the defendant himself were all called to establish that the defendant had requested counsel prior to making the statement and that he had been told a refusal to take the polygraph examination on the scheduled date would result in trial delays and additional expense.  Despite the fact that all of these individuals had testified fully regarding the circumstances of the pre-polygraph examination statement at the suppression hearing, the trial court precluded any such questioning at the trial on the merits.  Consequently, the jury was not privy to the fact that Brittingham requested counsel be present during the polygraph examination.  Their view of

---

5.  No issue is here raised as to the admissibility of the statement because it was given in conjunction with the administration of the polygraph.

the situation was further distorted by the fact that all State objections to questions concerning added expense or trial delays were sustained.

Based on the evidence before it, the jury found Brittingham guilty of rape in the first degree, robbery with a deadly weapon, use of a handgun in a crime of violence, burglary, and false imprisonment. He was sentenced to life imprisonment for the rape count, twenty years consecutive for the robbery with a deadly weapon charge, twenty years for the handgun offense to run concurrent with the sentence for the robbery with a deadly weapon, twenty years for the burglary offense to run concurrent with the sentence for the robbery with a deadly weapon count, and ten years for the false imprisonment count to run consecutive to the sentence for the rape.

Timely appeal was taken to the Court of Special Appeals. The intermediate appellate court affirmed the trial court. *Brittingham v. State,* 63 Md.App. 164, 492 A.2d 354 (1985).

Brittingham petitioned this Court for a writ of certiorari to the Court of Special Appeals. The State responded by filing a conditional cross-petition. Overall, four issues are raised by these petitions:

I) Whether the admission into evidence for impeachment purposes of an oral confession allegedly made by petitioner pursuant to a polygraph examination violated petitioner's due process rights because such confession was made involuntarily. (raised by petitioner).

II) Whether petitioner's allegation that the confession was involuntary as a matter of law and thus also inadmissible for impeachment purposes is preserved for appellate review. (raised by State).

III) Where a trial judge has determined that a statement taken in violation of *Miranda* is both voluntary and trustworthy, and thus admissible on rebuttal for

impeachment purposes under *Harris v. New York* [6] and *Oregon v. Hass* [7], must the jury also consider the issue of that statement's voluntariness? (raised by State).

IV) Whether the trial court's exclusion of evidence proffered by petitioner on the issue of the voluntariness of his alleged confession was erroneous. (raised by petitioner).

We granted both the petition and cross-petition to address questions of public importance.

■ Because we find the trial court proceedings infirm on nonconstitutional grounds (Issue IV), we reverse the judgments of the lower courts. In so doing, we adhere to well-established principles and decline to unnecessarily decide the constitutional issues raised. *See Simms v. State,* 288 Md. 712, 421 A.2d 957 (1980). Constitutional issues should be addressed only after a determination that the activity complained of comports with the requirements of this State's nonconstitutional law. *Hillard v. State,* 286 Md. 145, 150 n. 1, 406 A.2d 415, 418 n. 1 (1979); *Finke v. State,* 56 Md.App. 450, 482, 468 A.2d 353 (1983), *cert. denied,* 299 Md. 425, 474 A.2d 218 (1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 529, 83 L.Ed.2d 416 (1984). In the case *sub judice,* this preliminary hurdle has not been overcome.

Initially, we find, despite the State's assertions to the contrary, that the issue concerning the voluntariness of petitioner's statement to Corporal Sheldon is preserved for review. Prior to trial, in compliance with then Md. Rule 736,[8] Brittingham challenged the admissibility of the confession in a motion to suppress. The motion was couched in very general terms. The record of the suppression hearing reflects that petitioner's counsel orally argued for suppres-

---

6. 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

7. 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975).

8. Now Md. Rule 4–252.

sion of the statement solely on the bases that it was taken in violation of *Miranda* and was part of an inadmissible polygraph examination. The trial judge granted the motion to suppress on the basis of the *Miranda* violation. However, in so doing, she clearly ruled the statement was voluntarily made. Subsequently, when the State sought to introduce it at trial for impeachment purposes, defense counsel lodged a general objection to its admission.

The State now argues that this objection was "too little and too late." According to the State, petitioner should have presented all arguments relating to traditional voluntariness at the suppression hearing, despite the fact that he had succeeded in having the statement suppressed on independent, unrelated grounds, namely the *Miranda* violation. We disagree.

When the State sought to introduce the statement, defense counsel made a general objection. In light of the motion to suppress and the pre-trial ruling that the statement was voluntary, this general objection was sufficient to preserve all grounds for review in accordance with then Md. Rules 522 d and 736 a and b.[9] Thus, the circumstances which constitute improper influences so as to make the confession inadmissible are subject to review by this Court. *Jones v. State,* 188 Md. 263, 271, 52 A.2d 484, 488 (1947). Accordingly, we address the merits of the parties' contentions.

Md. Rule 736 g 2,[10] in effect at the time of this trial, states, "... [S]uppressed evidence may be used in accordance with law for impeachment purposes."[11] Hence, the admission of Brittingham's prior statement to the polygraph operator, wherein he admitted robbing the victims, to

---

**9.** Now Md. Rules 4–322(a) and 4–252(a) and (b), respectively.

**10.** Now Md. Rule 4–252(g)(2).

**11.** The Supreme Court approved the use of a confession suppressed pursuant to *Miranda* to impeach in *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

cast doubt upon the credibility of his trial testimony was proper only if done "in accordance with law."

Under Maryland criminal law, no confession or other significantly incriminating remark allegedly made by a defendant can be used as evidence against him, "unless it first be shown to be free of any coercive barnacles that may have attached by improper means to prevent the expression from being voluntary." *Hillard v. State,* 286 Md. at 150, 406 A.2d at 418 (1979) (footnote omitted); *see Scott v. State,* 61 Md.App. 599, 487 A.2d 1204 (1985); *Finke v. State,* 56 Md.App. 450, 468 A.2d 353 (1983); *e.g., State v. Kidd,* 281 Md. 32, 375 A.2d 1105, *cert. denied,* 434 U.S. 1002, 98 S.Ct. 646, 54 L.Ed.2d 498 (1977); *Watts v. State,* 99 Md. 30, 57 A. 542 (1904); *Nicholson v. State,* 38 Md. 140 (1873). This common law voluntariness requirement, unaffected by the Supreme Court's procedural mandate in *Miranda,* applies to statements offered to impeach the accused's trial testimony as well as those introduced in the State's case in chief. *See State v. Kidd,* 281 Md. 32, 375 A.2d 1105; *Chisley v. State,* 202 Md. 87, 95 A.2d 577 (1953) (the defendant conceded that the otherwise inadmissible statement was voluntary, and it was admitted to impeach). The burden is on the State to show that a challenged inculpatory statement was made in the absence of any improper influence. *Lodowski v. State,* 302 Md. 691, 715, 490 A.2d 1228, 1240 (1985), *vacated and remanded on other grounds,* —— U.S. ——, 106 S.Ct. 1452, 89 L.Ed.2d 711 (1986); *Hillard v. State,* 286 Md. at 151, 406 A.2d at 418–19.

So significant is the common law prohibition against the use of involuntary statements that this Court has delineated specific procedures to insure the voluntary nature of any statements admitted at trial. As noted by Judge Eldridge in *Dempsey v. State,* 277 Md. 134, 145, 355 A.2d 455, 461 (1976), one such safeguard is "the so-called 'Massachusetts rule,' which is the Maryland procedure, whereby the jury determines voluntariness only after the judge has 'fully and independently' ruled that the confession is voluntary." (ci-

tation and footnote omitted). This rule was set forth in *Smith v. State,* 189 Md. 596, 56 A.2d 818 (1948). There we said:

> "Before a confession can be admitted in evidence, the State must show, to the satisfaction of the court, that it was the free and voluntary act of an accused; that no force or coercion was exercised by the officers obtaining the confession, to cause the accused to confess; that no hope or promise was held out to an accused for the purpose of inducing him to confess. If, after a consideration of both the evidence of the State and the evidence offered by an accused (if any be offered by him) regarding the matter, the court is of the opinion that the evidence shows, *prima facie,* that the confession was freely and voluntarily made, it should be admitted in evidence; and, if not, it should be rejected. The matter, in the first instance, is for the court, and involves a mixed question of law and fact. When admitted in evidence it is *prima facie* proof that the confession was freely and voluntarily made, but the ultimate fact is for the jury, and must be considered by it in the light of all the facts and circumstances of the case. If the jury, notwithstanding the confession is admitted, finds that from all the testimony in the case it has not been proved beyond a reasonable doubt that it was the free and voluntary expression of the accused, it should disregard the confession in the consideration of the guilt or innocence of the accused. If they do find that the proof shows beyond a reasonable doubt that the accused freely and voluntarily made the same, and that no coercion or force was exercised by the officers to obtain the same, nor any hope or promise was held out by them to the accused to induce him to make the confession, they should consider it, together with all the other facts and circumstances in evidence, in arriving at the verdict." (citations omitted).

*Id.* at 603–04, 56 A.2d at 821–22. For a succinct statement of this two-tiered process, see *Hillard v. State,* 286 Md. at 151, 406 A.2d at 419.

It is the applicability of this procedure to statements offered to impeach which is the basis of the present debate. No Maryland opinion has heretofore addressed this precise question, although on several occasions we have upheld its applicability to statements offered in the State's case in chief. *See, e.g., Hillard v. State,* 286 Md. at 151, 406 A.2d at 419; *State v. Kidd,* 281 Md. at 37–38, 375 A.2d at 1109; *Dempsey v. State,* 277 Md. at 143–45, 355 A.2d at 460.

■ The State contends that we should not apply the two-tiered process to confessions used solely for impeachment as prior inconsistent statements and that a preliminary voluntariness determination by the trial judge is all that is required. It suggests that the introduction of evidence on voluntariness would confuse the jury.[12] According to the State, the only evidence which should be admitted is that which would explain the inconsistency.

We disagree. An examination of the rationale behind Maryland's application of the Massachusetts view reveals why.

In *Hillard v. State,* 286 Md. at 157, 406 A.2d at 422, we recognized

> "the longstanding public policy of this State against the use of involuntary confessions, which policy can be said to implicitly stem from two interrelated concerns—the belief that an involuntary or coerced confession is quite likely to be contrary to the truth, and also the recognition of the devastating effect which an adverse statement from a defendant's own lips may have upon the trier of fact in determining his guilt or innocence." (footnote and citations omitted).

---

**12.** The State focuses on the fact that Brittingham disputes Sheldon's rendition of the statement made to the polygraph operator and argues that Brittingham cannot logically deny the making of the statement and at the same time assail its voluntariness. To the contrary, we find this trial strategy legally plausible. It is analogous to pleading in the alternative.

Clearly, the Massachusetts rule is followed to further this strong public policy. As pointed out earlier, the rule requires the State to twice prove the voluntariness of a statement. First, the State must convince the judge by a preponderance of the evidence that the confession was voluntarily made. It then, again, must persuade the jury of its voluntariness beyond a reasonable doubt. *Id.* at 151, 406 A.2d at 419. The Constitution requires only the former, "a reliable and clear-cut determination of the voluntariness of the confession." *Jackson v. Denno,* 378 U.S. 368 at 391, 84 S.Ct. 1774 at 1788, 12 L.Ed.2d 908 at 924 (1964). Hence, jurisdictions such as Maryland, which by following the Massachusetts rule, require greater safeguards than those constitutionally mandated, have done so to further insure against the elicitation and use of involuntary statements.

Limiting the applicability of the Massachusetts rule to confessions offered as substantive evidence would thwart this Court's express policy against the detrimental use of involuntary statements. In many instances, a confession used to impeach can be just as damaging as one used in the prosecution's case in chief.

Further, we find no support for doing so in our case law. Admittedly our decisions have discussed the Massachusetts rule only in the context of confessions offered as direct proof of guilt. However, they do not so restrict its applicability, and we are not convinced that we should now do so.

When faced with the identical issue, other jurisdictions have also held that the Massachusetts rule applies to statements offered to impeach. *E.g., State v. Mitchell,* 611 S.W.2d 211 (Mo.1981). *Cf. State v. Goodmon,* 290 S.E.2d 260 (W.Va.1981) (Court approved voluntariness jury instruction applying to several confessions, two of which were offered solely to impeach).

Apparently, the trial judge in the instant case was of the same belief. She properly instructed the jury:

"[Y]ou should weigh the testimony with caution and should carefully scrutinize all of the circumstances sur-

rounding the statements to determine whether they were made freely and voluntarily. If you find that the statements were made freely and voluntarily by the defendant with an understanding of the nature of such statement without fear or coercion, either physical or psychological, and without promise of reward you may consider the statement made to Trooper Sheldon to evaluate the credibility of that statement, and the statement made to Detective Jansen as evidence."

Further, the State made no objection to this instruction. Hence, we find no reversible error as alleged by the State in its cross-petition.

■ Petitioner argues that the trial judge erred in making the threshold determination of voluntariness and in excluding evidence the jury should have been permitted to consider. We find no error in the judge's pretrial determination of voluntariness and reject petitioner's argument that the evidence offered at the suppression hearing demonstrated lack of voluntariness as a matter of law.

However, we find error was committed at trial when the trial court excluded evidence proffered by petitioner on the issue of the voluntariness of his alleged confession. Once the trial judge decided to admit the confession, the same evidence relevant to the issue of voluntariness on which she based her determination should have been given to the jury. "[T]he jury is entitled to have before it all of the evidence which affects the voluntary character of the [confession], and which the court passed upon in admitting it." *Day v. State*, 196 Md. 384, 399, 76 A.2d 729, 736 (1950). *See Gill v. State*, 265 Md. 350, 289 A.2d 575 (1972). "A trial judge may not select which circumstances relative to voluntariness may go to the jury and which may not." *Johnson v. State*, 31 Md.App. 303, 306, 355 A.2d 504, 506 (1976) (discussing the admissibility of evidence of the circumstances surrounding the taking of a polygraph statement admitted in the case in chief).

■ At trial, defense counsel sought to challenge the voluntariness of the confession by introducing evidence indicating that Brittingham had requested an attorney prior to making the statement and that he had been told a postponement of the polygraph examination to secure his attorney's presence would delay his trial an additional six weeks and would cost him money. The trial judge sustained all objections to evidence establishing these facts. In affirming the trial court's rulings, the Court of Special Appeals concluded that the defense successfully placed its allegations of increased cost and delay before the jury, *Brittingham v. State,* 63 Md.App. at 179 n. 3, 492 A.2d at 361 n. 3, and that Brittingham's request for counsel was irrelevant to the issue of voluntariness, *id.* at 183, 492 A.2d at 364.[13]

Based on our review of the record, we are unable to share the Court of Special Appeals' confidence that the jury had before it all relevant circumstances surrounding the making of the statement. Each time defense counsel sought to elicit testimony to the effect that the defendant was told a postponement of the polygraph test would result in trial delay and added expense, the State's objections were sustained. The fact that on one occasion the defendant answered the question prior to the judge sustaining the objection and the response was never stricken does not negate the error. At best, it only further muddled the jury's perception of which evidence could be properly considered as circumstances of the confession.

What is clear is that the trial court's preclusion of the defense's presentation of this testimony was in error. If believed, the allegations that Brittingham was induced to make the statement by threats of increased cost and trial delays were part of the circumstantial backdrop against

---

**13.** For a discussion of the relevance of the circumstances surrounding the making of a confession to the issue of the confessor's credibility, see *Crane v. Kentucky,* —— U.S. ——, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986).

which the jury was to assess the voluntariness of the statement. Such threats might, in the minds of the jurors, tend to prove the polygraph statement was given under some degree of psychological duress. The defense was entitled to have the jury determine whether these inducements were indeed made and if so, whether, when weighed against the State's evidence of voluntariness, they precluded a finding that the statement was voluntary beyond a reasonable doubt.

We reach the same conclusion with regard to the court's foreclosure of any testimony regarding Brittingham's desire to have his attorney present during the polygraph examination. We address this proffered testimony separately to emphasize that the relevance of a request for counsel is not exclusive to *Miranda* considerations.

■ At trial defense counsel sought to challenge the voluntariness of the confession by establishing that the defendant requested counsel be present during the polygraph examination. Questions to that effect were posed to four different witnesses. On every occasion, the State's objections were sustained. The Court of Special Appeals affirmed these evidentiary rulings and reasoned that the request for counsel was irrelevant to the issue of voluntariness because it was followed by a signed *Miranda* waiver and a polygraph release which stated the defendant had requested the test.

In our view, the subsequent waiver and release do not render the request for counsel irrelevant. Rather they are additional circumstances to be considered when assessing the traditional voluntariness of the statement. Granted, they substantially diminish the weight of Brittingham's request for counsel, but their existence does not warrant total exclusion of the fact of that request.

"A statement is voluntary in the 'traditional sense' when it is obtained without force applied, coercion used, hope held out or promise made on the part of the authorities." *Lodowski v. State*, 302 Md. at 715, 490 A.2d at 1240. If

believed, the fact that the defendant requested counsel and then proceeded with the polygraph without counsel only after being told that a postponement would result in trial delays and added costs raises the possibility of psychological coercion. Hence, the excluded evidence, along with all other circumstances surrounding the taking of the polygraph, should have been submitted to the jury on the issue of the statement's voluntariness.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND TO THAT COURT FOR A NEW TRIAL. COSTS TO BE PAID BY MAYOR AND CITY COUNCIL OF BALTIMORE.